## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYCE DEEMER, | : | |
| | : | |
| *Plaintiff,* | : | Civil Action No.:  1:23-CV-259 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, STATE | : | |
| CORRECTIONAL INSTITUTION | : | |
| MERCER, | : | |
| | : | |
| *Defendant*. | : | |

## **COMPLAINT**

AND NOW, comes the Plaintiff, Joyce Deemer, by and through her undersigned counsel, Sean A. Casey, Esquire, and files the following Complaint:

### **Nature of the Action**

This is an action brought pursuant to the Americans with Disabilities Act Amendments Act (ADAAA), as amended, 42 U.S.C. §12101 *et seq.*, Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S.A. §19, *et seq.*, as well as for retaliation, and the creation of a hostile work environment. Plaintiff, Joyce Deemer, seeks declaratory, injunctive, and compensatory relief for the discriminatory conduct, retaliation, and the creation of a hostile work environment by the Defendant in this matter.

### **Parties**

1.    Plaintiff, Joyce Deemer, is a female individual residing at 501 Wyllis Street, Oil City, Pennsylvania 16301.

2.    At all times relevant hereto, the Plaintiff was a qualified individual, and otherwise possessed of all qualifications necessary to perform the essential functions of the job.

3.    Defendant, Pennsylvania Department of Corrections, State Correctional Institution Mercer (hereinafter "SCI Mercer"), is an employer within the meaning of the Act, with over fifty (50) employees, and an address of 801 Butler Pike, Mercer, Pennsylvania 16137.

## Jurisdiction and Venue

4.    This Court has jurisdiction over this Complaint pursuant to the Americans with Disabilities Act Amendments Act, 42 U.S.C. §12101 *et seq*., and 28 U.S.C. §1331.

A.    Also, pursuant to 28 U.S.C. 1334 (3) and (4), which gives the district court's jurisdiction over actions to secure civil rights extended by the United States government.

B.    Also, pursuant to 28 U.S.C. §1367 giving the district court jurisdiction over state law claims.

5.    Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b).

## Statement of Facts

6.    Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

7.    Ms. Joyce Deemer began her employment with Pennsylvania Department of Corrections, SCI Mercer, in July of 2018, as a barber manager.

8.    After being hired, the Plaintiff became a barber instructor, and SCI Mercer was then able to be a Barber School.

2

9.      As a barber instructor, the Plaintiff's job duties include educating inmates on barber skills and developing transferable skills for their eventual release, and supervising and securing her work area.

10.     The Plaintiff has an excellent history of work performance.

11.     Prior to the Plaintiff's work injury, she had never received any verbal or written discipline, or been placed on any Performance Improvement Plan.

12.     In July of 2022, the Plaintiff was exposed to mold at work and the exposure caused injury to her nose, throat, and lungs.

13.     She did notify her employer of the work injury, specifically the safety manager, her boss, human resources, and the union.

14.     The Plaintiff applied for workers' compensation benefits and was denied by the employer on August 23, 2022.

15.     The Plaintiff then filed a Claim Petition on September 30, 2022, to appeal the employer's decision with the Workers' Compensation Office of Adjudication, and said process is ongoing.

16.     The Plaintiff has provided the employer with requested medical accommodations from her physician, and the employer denied all requests stating they had no light duty work for her.

17.     The Plaintiff was then later reassigned to the mail room.

18.     This was a good assignment in terms of her respiratory symptoms, as it did not seem to aggravate her condition, but it is a menial position that does not allow her to perform her job duties as an instructor of barber skills to inmates at the facility.

19.    The Plaintiff had complained and made requests concerning remediation in the barbershop, and most notably the lack of air testing regarding that facility.

20.    Shortly thereafter, the Plaintiff was moved from the mail room to the warehouse, wherein again she was exposed to a significant variety of respiratory irritants.

21.    This aggravated her condition and necessitated her to miss some workdays and leave work early due to breathing difficulties, doctor appointments, and medical testing.

22.    The Plaintiff maintains that this reassignment was retaliatory for her requesting testing to address the working conditions and its effects on her respiratory pathology.

23.    She had discovered while working in the mailroom that the appropriate testing had not been conducted in the barbershop, as was clearly necessary under the circumstances.

24.    The Plaintiff's physician provided an additional medical request dated November 21, 2022, indicating the Plaintiff should have time off of work and not work in the barbershop.

25.    The Plaintiff was returned to the barbershop area where some remediation had allegedly been done, though arguably not completed.

26.    Presenting herself into the barbershop area, the Plaintiff was again suffering from an aggravation of her condition that has become progressively worse in that facility, and abates somewhat when she returns home or is off for weekends.

27.    The Plaintiff has repeatedly requested for this testing to be done and it has not been addressed in any reasonable fashion.

28.    The employer's responded failure to engage in the interactive process, to determine what is wrong and what accommodations can be made is discriminatory and retaliatory.

29.    The Plaintiff feels at this point, the refusal to engage in the interactive process and address the issue is intended to drive her from the workplace.

30.     The Plaintiff has been experiencing ongoing harassment in the workplace from individuals concerning her complaints, requested accommodations, and medical issues, including her coughing and breathing sounds.

31.     The Defendant essentially only partially corrected a very clear health problem that existed in the Plaintiff's workplace.

32.     Namely, there was uncontrolled moisture in the barbershop area that she worked in, which created a mold situation.

33.     The mold situation caused the Plaintiff significant respiratory problems, and presented a health hazard to anyone that would come into contact with it.

34.     The remedial actions taken by the Department of Corrections were not accommodations, they were an obligation the employer had to provide a safe work environment, and a safe classroom for the inmates that would come to the barbershop for instruction.

35.     The obligation arose once they took the corrective measures necessary to remove the toxic mold that existed in the facility.

36.     The Defendant presented a document to the EEOC stating that moisture testing was done post remediation, which is not what is necessary to test for any residual mold in the workplace.

37.     The Plaintiff has repeatedly requested that mold testing be conducted and be provided to her, and she has received nothing in response.

38.     Based on the documentation the Defendant presented to the EEOC, it still has not been done.

39.     The Plaintiff has requested reasonable accommodations would include improved ventilation, possibly air purifiers, and testing of the HVAC system for any traces of residual mold.

40.    The Defendant has not shown that they have done so, nor have they provided any evidence to that effect, despite the Plaintiff's repeated requests.

41.    It remains the Plaintiff's position that the requested accommodations and/or modifications to the barbershop would allow her to return to the position for which she was hired.

42.    It remains the Plaintiff's position that the requested accommodations are reasonable not only as a request under the ADA, but would otherwise be an obligation in properly eliminating any pathological exposures that might exist in that barbershop for the Plaintiff, inmates, and other staff that might be exposed.

43.    The Defendant should be required to explain why the request for air monitoring for additional mold is not reasonable, given the fact that their own medical examiner indicated the necessity of said monitoring.

44.    Further, to find out why modifications to the barbershop to include improved ventilation and thorough mold testing to ensure that there is no additional pathogen in the workplace is not reasonable.

45.    Regarding the current litigation of the Plaintiff's Claim Petition for workers' compensation benefits due to injuries sustained while working for the employer, the Plaintiff was required to attend a medical examination conducted by a doctor of Defendant's choosing.

46.     The Plaintiff reported to defense medical examiner, Dr. Gregory J. Fino on January 30, 2023, and a report from Dr. Fino followed that was dated February 7, 2023.

47.    It is noted in the medical report that Dr. Fino not only diagnoses the Plaintiff with a respiratory condition due to her occupational exposure to mold in the workplace, he indicates that, "She must avoid any further potential mold contamination, and that needs to be monitored."

48.     Dr. Fino also notes in the report that the Plaintiff has not returned to her baseline condition, that her employment caused her to suffer the new injury, "she should avoid exposures that could potentially still contain mold," and that, "it is prudent that there is no mold in the work area."

49.     Dr. Fino further states in the report that due to the work injuries, it is possible that other irritants excluding mold could still exacerbate the Plaintiff's symptoms as well.

50.     To date, to the best of the Plaintiff's knowledge, the Defendant has not complied with the clear instruction of its own medical examiner.

51.     More specifically, they have not demonstrated that they have done anything to evaluate mold levels in the barbershop, monitor mold levels in the barbershop, or do additional testing that is necessary to demonstrate that the barbershop is free and clear of mold.

52.     Certainly, this is by all definitions a reasonable requested accommodation, if not an obligation under OSHA regulations, and therefore per se reasonable.

53.     The Plaintiff expected the employer to make reasonable accommodations to allow her to return to her position, rather than relegate her to monotonous positions meant to demean her and drive her from the facility.

54.     No explanation was given for why they refuse to accommodate or properly address the ventilation system.

55.     Ms. Deemer received no notice of violation for the work injury or an explanation as to why they refuse any responsibility for the work injury itself.

56.     As time has gone on, the Plaintiff's condition has worsened, she has been forced to miss days of work, had continuing medical care and new treatment involving voice therapy, and yet the Defendant still denies her workers' compensation benefits and requested accommodations.

57.     The Plaintiff believes these actions are discriminatory and retaliatory on behalf of the employer and seeks redress of her rights.

58.     The Plaintiff filed a Charge with the EEOC on or about December 16, 2022.

59.     The Plaintiff received her Notice of Right to Sue letter on or about June 2, 2023. (Exhibit 1).

## COUNT I: DISABILITY DISCRIMINATION: ADAAA & PHRA

60.     Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

61.     The Defendant employer expressed discriminatory animus and committed discriminatory acts against the Plaintiff in violation of the Americans with Disabilities Act Amendment Act, as amended 42 U.S.C. §12010 et. seq., and the Pennsylvania Human Relations Act, 43 P.S. §951 *et. seq*.

62.     The Plaintiff has been diagnosed with several medical conditions, related to a work injury, making her disabled within the meaning of the ADAAA, this definition would include regarding as or having a history of disability.

63.     The Defendant was made aware of these disabilities, and a number of requested accommodations were made by the Plaintiff as a result of these disabilities.

64.     The Defendant has failed to engage in the interactive process, and with little to no discussion about the requested accommodations.

65.     The Defendant's actions were done with malice or reckless disregard of Plaintiff's federally protected rights.

66.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer, lost wages and benefits, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT II: RETALIATION: ADAAA & PHRA

67.     Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

68.     Plaintiff advised and discussed her medical conditions, requested accommodations and her need for leave, and rights to be free of discrimination on multiple occasions with the Defendant, which constituted protected activity under the ADAAA and PHRA.

69.     As a result, Plaintiff was harassed, humiliated, and discriminated against by the Defendant in retaliation for the disclosure of her medical conditions, and the assertion of her rights under the ADAAA and PHRA.

70. The Plaintiff has been experiencing ongoing harassment in the workplace from individuals concerning her complaints, requested accommodations, and medical issues, including her coughing and breathing sounds.

71. Not only did the Defendant not take measures to correct the discriminatory nature of their criteria, but they engaged in activities to question and discipline the Plaintiff.

72. Under the ADAAA and PHRA, a retaliatory action by an employer toward an employee for exercising their statutory rights is a violation of that statute and against public policy.

73. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

## COUNT III: HOSTILE WORK ENVIRONMENT

74. Plaintiff incorporates all the previous paragraphs by reference as if fully set forth herein.

75.    Plaintiff has repeatedly reported discrimination to the Defendant, to various agents employed by the Defendant.

76.    The Plaintiff has been experiencing ongoing harassment in the workplace from individuals concerning her complaints, requested accommodations, and medical issues, including her coughing and breathing sounds.

77.    As described above, Defendant subjected the Plaintiff to a hostile work environment on the basis of her disability.

78.    The Plaintiff suffered a work injury while in the employ of the Defendant on or about July 5, 2022.

79.    The Plaintiff asserted her rights under the Pennsylvania Workers Compensation Act, and was denied benefits by the employer on August 23, 2022.

80.    The Plaintiff filed a Claim Petition on September 30, 2022, to appeal the employer's decision with the Workers' Compensation Office of Adjudication, and said process is ongoing.

81.    The Defendant had the Plaintiff seen by a doctor of their selection, who opined the Plaintiff with a respiratory condition due to her occupational exposure to mold in the workplace, and that "she must avoid any further potential mold contamination, and that needs to be monitored."

82.    Dr. Fino also noted in his report that the Plaintiff had not returned to her baseline condition, that her employment caused her to suffer the new injury, "she should avoid exposures that could potentially still contain mold," and that, "it is prudent that there is no mold in the work area."

83.    A medical opinion that concurred with all the medical opinions of the treating physicians the Plaintiff had seen to that point, and since.

11

84.     The Defendant still alleges that there was no work injury.

85.     The Defendant continues to deny the Plaintiff workers' compensation benefits, and force her to work in areas that exacerbate her condition, causing her to miss work, seek continued medical care and new treatment, including voice therapy.

86.     Plaintiff maintains that Defendant's acts are intentional and retaliatory, and have created a hostile work environment to force her out, in response to the Plaintiff's assertion of her rights under the ADAAA and PHRA, and the Pennsylvania Workers' Compensation Statute, and in violation of public policy as established by the Pennsylvania Supreme Court in *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998).

87.     As a direct and proximate result of Defendant's actions, the Plaintiff has suffered and continues to suffer, lost wages and benefits, lost employment opportunities and future income, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, the Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendant, and award her damages for past lost wages and benefits, future lost wages and benefits, compensatory damages for humiliation, embarrassment and inconvenience, loss of standing and reputation in the community, punitive damages, liquidated damages, declaratory and injunctive relief, attorney's fees and costs, adverse tax consequences, and such other relief as the Court may deem appropriate.

A jury trial is demanded.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A)      Grant a permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert and participation with them, from engaging in, ratifying, or refusing to correct, employment practices which interfere with the exercise of rights and/or discriminate in violation of the ADAAA and PHRA;

B)      Order Defendant to institute and implement training programs, policies, and practices and programs designed to ensure the Defendant provides proper leave and does not retaliate and/or interfere with those who engage in statutorily protected activity;

C)      Order Defendant to make whole Joyce Deemer, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, compensate her for lost benefits, and all other affirmative legal and equitable relief necessary to eradicate the effects of its unlawful employment practice;

D)      Order Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

E)      Order Defendant to pay Plaintiff the reasonable attorney's fees and costs and other legal expenses incurred by the Plaintiff in this matter;

F)      Order Defendant to remove and expunge, or to cause to be removed or expunged, all negative, discriminatory, and/or defamatory memorandum or other documentation from the Plaintiff's record of employment; and

G)    Award the Plaintiff such other legal and equitable relief as the Court deems appropriate and just.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

Respectfully submitted,

/s/ Sean A. Casey
Sean A. Casey (Pa I.D. 79806)

**SEAN A. CASEY, ATTORNEY AT LAW**
First & Market Building
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
T: (412) 201-9090
F: (412) 281-8481
E: Sean@caseylegal.com